TRAITZ v. TRAITZ
2023 OK CIV APP 1
Case Number: 120350
Decided: 12/07/2022
Mandate Issued: 01/05/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 1, __ P.3d __

 

IN RE THE MARRIAGE OF:
JESSICA AUBREY TRAITZ, Petitioner/Appellee,
v.
JAMES VICTOR TRAITZ, Respondent/Appellant.
APPEAL FROM THE DISTRICT COURT OF
CANADIAN COUNTY, OKLAHOMA
HONORABLE CHARLES GASS, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS
Christopher D. Smith, Tommy Pfeil, Sarah D. Willey, THE SMITH FIRM, Oklahoma City, Oklahoma, for Petitioner/Appellee
R. Kevin Butler, Sadie J. Flynn, Alexandria M. Smith, BUTLER & FLYNN, PLLC, Oklahoma City, Oklahoma, for Respondent/Appellant
JANE P. WISEMAN, PRESIDING JUDGE:
¶1 James Victor Traitz appeals trial court orders vacating an order granting an annulment to James and denying his motion to reconsider. The issues before us are whether James showed the trial court abused its discretion or erred as a matter of law either in granting Jessica Aubrey Traitz's motion to vacate the annulment or in denying James' motion to reconsider that decision. After review, we conclude that the trial court erred as a matter of law in holding James was required to file a motion for default judgment and using that legal basis for vacating the decree of annulment. The decree of annulment should not have been vacated, and the refusal to reconsider the decision to vacate was therefore an abuse of discretion. Accordingly, we reverse the trial court's orders and remand with directions to enforce the decree of annulment and its disposition of property and debt.
FACTS AND PROCEDURAL HISTORY
¶2 Jessica Aubrey Traitz filed a petition for dissolution of marriage on March 20, 2019. She was represented then by Debbie L. Self. On May 28, 2019, James filed an answer admitting some of Jessica's allegations and denying the remainder. He also asserted a counterclaim for annulment based on fraud. James filed a motion on December 9, 2019, to enter the case on the non-jury docket and asked for the case to be set on January 10, 2020. The docket sheet does not reflect that a trial was held on that date. Jennifer L. Hoskins filed an entry of appearance on behalf of Jessica that same day. James filed an initial witness and exhibit list on March 20, 2020. On April 8, 2020, James' attorneys filed an affidavit of service which said, "By agreement, I, R. Kevin Butler, on the 27thsic] by electronic mail on Petitioner's counsel, Debbie Self." The attached document, James' answer and counterclaim, had a previous file-stamp date of May 28, 2019.
¶3 A week after James served his answer and counterclaim, Debbie Self and Jennifer Hoskins on April 15, 2020, filed a motion to withdraw in which they advised the court that Jessica "no longer desires to be represented by counsel, desires to proceed pro se and has terminated the attorney-client engagement agreement." The motion noted that Jessica's deadline to file a response to James' counterclaim for annulment was April 16, 2020, James' discovery requests were served on March 18, 2020 and responses were due 30 days thereafter, the pretrial conference was set for April 29, 2020, and the trial was scheduled for May 14, 2020. The trial court allowed withdrawal of counsel that same day and the order was sent to Jessica.
¶4 James filed a pretrial conference statement on April 23, 2020, and a motion to compel responses to his discovery requests on May 18, 2020. On June 18, 2020, the trial court entered an order compelling Jessica to respond to James' discovery requests no later than July 3, 2020.
¶5 The docket sheet shows a minute entry from October 6, 2020, posted on October 7, 2020, that a pretrial conference was held via Zoom on October 6, 2020. James appeared through counsel, but Jessica, according to the docket entry, "appears not, having previously not appeared at earlier hearings, as well. This matter is set for a trial on the merits and on such date, if she does not appear, a default judgment will be entered." At the trial scheduled for October 15, 2020, Jessica again failed to appear and the court granted a default decree of annulment.
¶6 The default decree of annulment filed that same day granted an annulment "based upon [Jessica's] fraud in the inducement of marriage" and awarded the parties their separate property, divided debt, and ordered Jessica to pay James $59,403.30 for those debts, and additionally ordered her to pay $8,500 in attorney fees and costs.
¶7 James filed an application for contempt citation on August 23, 2021,
alleging Jessica "knowingly, willingly, and contemptuously failed and refused to pay" the amounts awarded to him in the decree.
¶8 Almost a year after the annulment decree was filed and sent to Jessica, she filed a motion to dismiss the application for contempt and a motion to partially vacate the decree of annulment. Jessica alleges that James failed to file a motion for default as required by Rule 10 of the Rules for the District Courts before the entry of the default judgment. She further alleges that "[i]t appears the default was entered following the Pretrial Conference . . . ." She asserts that the trial court's decree of annulment is void because it divides assets and debts, which she claims is not allowed in an annulment. She argues that the decree was made in excess of the trial court's power and as a result is void. She contends, "The Court lacked jurisdiction to issue an order providing for an annulment of the parties AND a division of the property as was entered in the October 15, 2020, Default Decree of Annulment."
¶9 James responds that the trial court's default decree of annulment contains "a valid, equitable division of the property accumulated during the time the parties were living together subsequent to their fraudulent marriage."
¶10 After a hearing on December 1, 2021, the trial court took the case under advisement. On December 14, 2021, the trial court issued a memorandum opinion holding: "Pursuant to the holding in Schweigert v. Schweigert, , , the Court finds that [James'] failure to file a motion for default and give notice to [Jessica], as required under Rule 10, was an irregularity in proceedings requiring the judgment to be vacated pursuant to . As such, [James'] Motion to Dismiss Application for Contempt is moot."
¶11 On December 27, 2021, James filed a motion to reconsider asserting that a motion for default was not necessary because Jessica had sufficient notice before the trial court entered the default decree. Specifically, James asserted that because the matter was regularly set on the trial docket, no motion for default was necessary.
¶12 The trial court denied James' motion to reconsider and ordered that its "Memorandum Opinion is hereby clarified to show that the Default Decree of Annulment filed herein on October 15, 2020, is hereby vacated, set aside and held for not [sic], in total."
¶13 James appeals.
STANDARD OF REVIEW
¶14 "Our role in reviewing a trial court decision either vacating or refusing to vacate a judgment is to assess whether there has been an abuse of discretion." Velasco v. Ruiz, , ¶ 6, . "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Id. "The reviewing court does not look to the original judgment, but rather the correctness of the trial court's response to the motion to vacate." Kordis v. Kordis, , ¶ 6, . "Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion." Waldrop v. Hennessey Utilities Auth., , ¶ 7, . "The district court's construction and application of Rule 10 to the undisputed facts before it presents a pure question of law subject to de novo review." Schweigert v. Schweigert, , ¶ 7, 348 P.2d 696.
ANALYSIS
¶15 James asserts on appeal that Rule 10 did not require a motion for default judgment. We agree that neither Rule 10 nor Schweigert requires a motion for default judgment when the defaulting party with actual notice of the trial setting fails to appear for trial, and the trial court erred as a matter of law in vacating the decree on that ground.
I. The application of Rule 10 
¶16 The trial court concluded that the default decree should be vacated for failure to comply with District Court Rule 10, 12 O.S.2021, ch. 2, app., which states:
In matters in default in which an appearance, general or special, has been made or a motion or pleading has been filed, default shall not be taken until a motion therefore has been filed in the case and five (5) days notice of the date of the hearing is mailed or delivered to the attorney of record for the party in default or to the party in default if he is unrepresented or his attorney's address is unknown. If the addresses of both the party and his attorney are unknown, the motion for default judgment may be heard and a default judgment rendered after the motion has been regularly set on the motion and demurrer docket. It shall be noted on the motion whether notice was given to the attorney of the party in default, to the party in default, or because their addresses are unknown, to neither. Once a party or an attorney provides an email address for service in a specific case in accordance with the Rules for Electronic Filing in the Oklahoma Courts, the provided email address shall serve as the appropriate address for purposes of notice as required by this rule, unless the filer is informed that the electronic transmission failed. See Rules for Electronic Filing in Oklahoma Courts. .
Pursuant to Rule 10, notice is not required under certain circumstances enumerated in the Rule including "any case that is at issue and has been regularly set on the trial docket in which neither the other party nor his or her attorney appears at the trial." Id.
¶17 It is undisputed that the case was at issue--an answer and counterclaim having been filed--and had originally been set on the trial docket for May 14, 2020. James demonstrated that Jessica had adequate notice of the trial date and Jessica does not dispute that she had notice and failed to appear. In addition, Jessica's counsel's motion to withdraw listed the pretrial conference date, the May 14, 2020 trial date, as well as other relevant deadlines and hearing dates for the case. The withdrawal motion's certificate of service also states that it was sent to Jessica by email and by regular mail. In his brief, James states that after Jessica's attorneys withdrew and she did not hire new counsel, James' "counsel maintained an open line of communication with [Jessica] and sent her copies of every document filed, including the pretrial conference statement." James reports that the pretrial conference and the trial were both delayed due to COVID-19-related court closures.
¶18 It is clear that James' additional notice of these settings was precipitated by the withdrawal of Jessica's counsel. After they withdrew and she decided to proceed pro se, James asserts he treated her as a pro se litigant and "provided her copies of all filed pleadings, as well as maintained an open line of communication in order to negotiate with [Jessica] and ensure she was aware of all upcoming dates." James states that he "made sure [she] had both legal and actual notice of all court dates, mostly by email correspondence using the email address provided by [Jessica] and which [she] also used to communicate with [James'] attorneys."
¶19 James asserts Jessica "was not without notice of any date or appearance required of her, she simply chose not to appear." A copy of an email sent on April 23, 2020, from James' attorney to James and Jessica shows the pretrial hearing was reset for October 6, 2020, and the trial was reset for October 15, 2020. Jessica does not dispute this assertion which is also corroborated by the record.
¶20 "A party proceeding pro se in a civil action or appeal is held to the same standards as an attorney." L'ggrke v. Sherman, , ¶ 8, . Jessica does not dispute that she was given notice of the pretrial conference and trial date and failed to appear for either despite receiving notice. Being a pro se litigant did not relieve her of her responsibility to appear for pretrial or trial or be subject to default.
¶21 We agree with James that he was not required to file a motion for default because the case was at issue and had been regularly set on the trial docket. The Rule 10 requirement of a motion for default judgment by its very language does not apply in this case, particularly when Jessica had numerous notifications of the vital appearance dates which could result in a default judgment against her and she chose to ignore them. To hold otherwise is contrary to the clear language of Rule 10, would encourage parties to ignore judges' orders setting matters for hearing and waste valuable judicial time, and would wreak a fair amount of havoc in legal proceedings without any concomitant benefit. And we cannot see any due process basis for this position when Jessica had ample notice of the trial setting as well as the admonition from the court in its October 7, 2021 minute entry that if she failed to appear again, default judgment would be entered against her.
¶22 We agree with James' argument that Jessica was notified of the court's deadlines and settings, particularly the pretrial and trial dates, both original and subsequent settings. The trial court erred as a matter of law in vacating its previous order on the ground that James was required to file a motion for default pursuant to Rule 10 before judgment could be granted in his favor for Jessica's failure to appear.

II. It was error to vacate the previous order and an abuse of discretion to deny James' motion to reconsider. 
¶23 After the decree was filed, Jessica waited nearly a year to file her motion to vacate asserting legal error in the trial court's decision dividing property and assigning debt pursuant to the annulment. As we held in the previous section, the trial court erroneously vacated the decree of annulment for an irregularity finding James failed to file a motion for default judgment pursuant to Rule 10. In the absence of that ground for vacating the decree, Jessica's contention that the trial court erred as a matter of law in dividing property pursuant to an annulment was her only remaining basis for setting aside the default decree.
¶24 The parties have diametrically opposed positions on this issue, and after review of the authorities cited and the law on the question, we are persuaded that James' position is correct. Oklahoma law has recognized the ability of a court to make an equitable division of property in a void or voidable marriage. In Krauter v. Krauter, , ¶ 0, , the Supreme Court concluded that in a void marriage, a court cannot grant alimony but "has authority to make an equitable division of the property jointly accumulated by the parties while they lived together as husband and wife." The Supreme Court reiterated this position in Whitebird v. Luckey, , ¶ 19, , stating that equitable division of property in a void or voidable marriage rests "upon the theory that the acquisition thereof is a result of the joint efforts of the parties." See also Whitney v. Whitney, , (recognizing the right of parties to a void marriage to bring a suit to settle property rights). This applies in this circumstance in which the marriage was annulled. Jessica had ample notice of the trial setting and a full opportunity to avoid the resulting default judgment but did not avail herself of the opportunity to argue her position on questions of property and debt. Jessica has not demonstrated any legal impropriety by the trial court in allocating debt or property in its decree of annulment.
¶25 Because the trial court erred as a matter of law in vacating its previous decree of annulment, we conclude it was an abuse of discretion not to reconsider its erroneous decision to vacate that decree.
CONCLUSION
¶26 The trial court erred as a matter of law in concluding that the previous decree should be vacated because James failed to file a motion for default. The additional ground urged by Jessica provides no basis for vacating the decree. Based on the error in vacating the annulment, it was an abuse of discretion to deny James' motion to reconsider which should have been granted. Accordingly, we reverse the trial court's orders and remand with directions to enforce the decree of annulment and its disposition of property and debt and award of attorney fees.
¶27 REVERSED AND REMANDED WITH DIRECTIONS.
BLACKWELL, J., and BARNES, J. (sitting by designation), concur.
FOOTNOTES
 An appellate court "has the discretion to take judicial notice of the dockets of District Courts." In re M.K.T., , n. 54, . "Our discretionary expansion of the appellate record through the procedure of judicial notice is consistent with this Court's authority to require supplementation of an appellate record pursuant to Okla. Sup. Ct. R. 1.28(h), and the Court's common-law power to issue a discretionary writ of certiorari for transmittal of trial court records to an appellate court." Id.
 According to the record under review, Jessica was given a final opportunity to appear before the court and have her case heard on the merits and failed to do so. The entry of the decree of annulment was made pursuant to Jessica's failure to appear for the trial on October 15, 2020, not at the pretrial the previous week.
 Schweigert v. Schweigert, , 348 P.2d 696, has no application here. Schweigert concerned a divorce case in which husband appeared for the hearing on wife's application for a temporary order but did not file an answer or entry of appearance. Schweigert concerned only the first paragraph of Rule 10 and whether husband's appearance at the temporary order hearing constituted "making an appearance" necessitating a motion for default and notice of hearing. The Supreme Court held it did. The present case concerns the second paragraph of Rule 10 which states several exceptions to the notice of taking default requirement, in particular exception (5) which is clearly applicable here: "any case that is at issue and has been regularly set on the trial docket in which neither the other party nor his or her attorney appears at the trial." Rule 10 of Rules for District Courts, 12 O.S.2021, ch. 2, app.